UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCISCO GUZMAN, ROSARIO AYALA,
MANUEL FLORES DOMINGUEZ, NELY
OLMOS FLORES, ERNESTO MEJIA
GONZALEZ, ONEIDA TACUBA MEJIA,
MARIO ENRIQUE MUÑOZ, GREGORIO
PEREZ ORTEGA, PATRICIA PAVIA, ROSA
PEREZ, ALICIO RAMOS, MARTIN TORRES
REYES, S.F.C., D.P.C., B.R.E., O.C.F., R.M.F.,
A.M.M., J.M., M.M., A.M.O., E.G.R., F.T.R.,
R.M.R., J.C.R., F.T.V., AND MAKE THE ROAD
NEW YORK;

                    Plaintiffs,

      v.

THOMAS T. HECHT, LEONARD H. HECHT,
THOMAS T. HECHT., P.C., AND LUIS
GUERRERO;

                  Defendants.

Civil Action No.: 18-cv-03947

# MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS THOMAS T. HECHT, LEONARD H. HECHT,
AND THOMAS T. HECHT, P.C.'S MOTION TO DISMISS

Robert J. Anello
Catherine M. Foti
Nicole L. Buseman
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ...........................................................................................................2

ARGUMENT .................................................................................................................6

I. Plaintiffs Lack RICO Standing Because the Individuals Fail to State a
Cognizable Injury and MTR Fails to State that the Hechts Caused
Them Any Injury.................................................................................................7

    A. None of the Individual Plaintiffs' Alleged RICO Injuries....................................7

        i. Risk of Deportation Is Not A "Clear and Definite" RICO
Injury and was Proximately Caused by the Plaintiffs'
Status, Not by the Hechts...........................................................................7

        ii. Emotional Distress is Not a Cognizable RICO Injury ...............................9

        iii. Payments of Legal Fees Are, At Most, Personal Injuries,
Not The Required Injuries to Business or Property ..................................10

    B. MTR Fails to Allege Any Actual Injury Cause by the Hechts .........................11

        i. MTR Does Not Plead Injury to Its Business Caused by the
Hechts ......................................................................................................12

        ii. MTR Cannot Bring A Claim on Behalf of Its Members
Because They Each Face Individual Injuries.............................................13

II. Plaintiffs Substantive RICO Claim Fails Because the Plaintiffs Fail to
Plead Mail and Visa Fraud with Sufficient Particularity ..............................14

    A. The Mail Fraud Allegations Lack Any Claim of Improper Intent........................15

    B. The Palintiffs Fail to State a Visa Fraud Claim as the Complaint
Fails To Allege Any False Information in the Asylum Applications ..................17

III. The Enterprise Theories Both Fail to Allege the Requirements of a
Rico Enterprise...............................................................................................18

i

A. The Claimed "Association in Fact" Enterprise Fails to Demonstrate the Required Relationship between, or Separateness from, the Associated Parties ...................................................................................................19

B. The "Corporate Enterprise" Alternative Lacks Distinctness Because It Involves the Hecht's Participating in the Firm's Ordinary Business Activities ..............................................................................21

IV. The Failure of the Substantive RICO Claim Dooms the Civil Rico Conspiracy Claim...........................................................................................23

V. The Court Should Decline to Exercise Jurisdiction or Dismiss the State Law Claims ............................................................................................................23

A. The Fraud-Based State Claims Fail Under Federal Rule 9(b) ..............................24

B. The N.Y. General Business Law Claim Must Be Dismissed Because Defendants' Alleged Conduct Was Not Directed at the Public at Large .......................................................................................................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*101 McMurray, LLC v. Porter,*
10-cv-9037 (CS), 2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) ............................... 19

*AFSCME Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.,*
948 F. Supp. 2d 338 (S.D.N.Y. 2013).......................................................... 15

*Amalgamated Bank of New York v. Marsh,*
823 F. Supp. 209 (S.D.N.Y. 1993).............................................................. 21

*Angermeir v. Cohen,*
14 F. Supp. 3d 134 (S.D.N.Y. 2014)......................................................... 9, 12

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006)....................................................................... 8, 9, 10, 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................... 6

*Baker v. Dorfman,*
239 F.3d 415 (2d Cir. 2000).................................................................... 11

*Bankers Trust Co. v. Rhoades,*
741 F.2d 511 (2d Cir. 1984).................................................................... 10

*Boritzer v. Calloway,*
10 CIV. 6264 JPO, 2013 WL 311013 (S.D.N.Y. Jan. 24, 2013).......................... 16

*Cedric Kushner Promotions, Ltd. v. King,*
533 U.S. 158 (2001)........................................................................... 22

*Cohen v. Cohen,*
993 F. Supp. 2d 414 (S.D.N.Y. 2014).......................................................... 14

*Cohen v. S.A.C. Trading Corp.,*
711 F.3d 353 (2d Cir. 2013)................................................................... 14

*Cruz v. FXDirectDealer, LLC,*
720 F.3d 115 (2d Cir. 2013)................................................................ 7, 22

*Diamond v. Sokol,*
468 F. Supp. 2d 626 (S.D.N.Y. 2006).......................................................... 11

*Dornberger v. Metro. Life Ins. Co.,*
 961 F. Supp. 506 (S.D.N.Y. 1997) ................................................................... 8

*Dupler v. Costco Wholesale Corp,*
 249 F.R.D. 29 (E.D.N.Y. 2008) ...................................................................... 25

*Eaves v. Designs for Fin., Inc.,*
 785 F. Supp. 2d 229 (S.D.N.Y. 2011) ............................................................. 21

*FindtheBest.com, Inc. v. Lumen View Technology, LLC,*
 20 F. Supp. 3d 451 (S.D.N.Y. 2014) ............................................................... 23

*First Capital Asset Mgmt. v. Satinwood, Inc.,*
 385 F.3d 159 (2d Cir. 2004) .............................................................. 19, 20, 23

*First Nationwide Bank v. Gelt Funding Corp.,*
 27 F.3d 763 (2d Cir. 1994) ..................................................................... 7, 8, 9

*Foster v. 2001 Real Estate,*
 14 CIV. 9434 (RWS), 2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015) .................... 19

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,*
 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................. 24

*Gotlin v. Lederman,*
 367 F. Supp. 2d 349, 357 (E.D.N.Y. 2005) ..................................................... 11

*Gross v. Waywell,*
 628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................. 14

*GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel,*
 381 F. Supp. 2d 267 (S.D.N.Y. 2005) ............................................................. 25

*Hawaii v. Standard Oil Co. of Cal.,*
 405 U.S. 251 (1972) ...................................................................................... 10

*Healey v. Pyle,*
 89-civ-6027 (JSM), 1992 WL 80775 (S.D.N.Y. Mar. 31, 1992) ......................... 18

*Hecht v. Commerce Clearing House, Inc.,*
 897 F.2d 21 (2d Cir. 1990) ............................................................................ 23

*Hughes v. Ester C Co.,*
 930 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................................. 24

*Hunt v. Washington State Apple Advertising Comm'n*,
    432 U.S. 333 (1997)................................................................................. 13

*In re Take-Two Interactive Securities Litigation*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2016)....................................................... 15

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
    1:14-cv-3318 (GHW), 2015 WL 2400182 (S.D.N.Y. May 20, 2015).................... 17

*Kashelkar v. Rubin & Rothman*,
    97 F. Supp. 2d 383 (S.D.N.Y. 2000)........................................................ 11

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ................................................................ 7

*Kerik v. Tacopina*,
    64 F. Supp. 3d 542 (S.D.N.Y. 2014)..................................................... 9, 12

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir.1999)..................................................................... 10

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
    478 Fed. App'x 679 (2d Cir. 2012)........................................................... 15

*Lynch v. Amoruso*,
    232 F. Supp. 3d 460 (S.D.N.Y. 2017)......................................................... 7

*Mackin v. Auberger*,
    59 F. Supp. 3d 528 (W.D.N.Y. 2014)........................................................ 21

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)...................................................................... 6

*Meisel v. Grunberg*,
    651 F. Supp. 2d 98 (S.D.N.Y. 2009).......................................................... 24

*Moore v. PaineWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999)..................................................................... 14

*Morin v. Trupin*,
    711 F. Supp. 97 (S.D.N.Y. 1989)............................................................. 15

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..................................................................... 24

*Plount v. American Home Assurance Co., Inc.*,
    668 F. Supp. 204 (S.D.N.Y. 1987) ....................................................................................... 14

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985) ................................................................................................... 7, 10

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) .......................................................................................... 15

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ............................................................................................ 25

*Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*,
    45 F.3d 58 (2d Cir. 1995) ............................................................................................. 13

*Town of Mamakating, N.Y. v. Lamm*,
    15-cv-2864 (KBF), 2015 WL 5311265 (S.D.N.Y. Sept. 11, 2015) ................................... 8, 20

*Trinity Bui v. Indus. Enters. of Am.*,
    594 F. Supp. 2d 364 (S.D.N.Y. 2009) ............................................................................. 24

*U1IT4less, Inc. v. FedEx Corp.*,
    157 F. Supp. 3d 341 (S.D.N.Y. 2016) ............................................................................. 22

*United States v. Autuori*,
    212 F.3d 105 (2d Cir. 2000) .......................................................................................... 15

*United States v. Turkette*,
    452 U.S. 576 (1981) ..................................................................................................... 20

*Vargas v. Choice Health Leasing*,
    1:09-cv-08264 (DLC), 2011 WL 1758619 (S.D.N.Y. May 9, 2011) ..................................... 24

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................................... 13

*Watkins v. Smith*,
    12-cv-4635 (DLC), 2012 WL 5868395 (S.D.N.Y. Nov. 19, 2012) ...................................... 12

*Westchester County Indep. Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) ............................................................................... 9

## Rules, Statutes, and Other Sources

8 U.S.C. § 1158 .................................................................................................. 3

8 U.S.C. § 1229 .................................................................................................. 4

18 U.S.C. § 1546 ............................................................................................... 17

18 U.S.C. § 1961 ............................................................................................... 21

18 U.S.C. § 1962 ............................................................................................... 23

18 U.S.C. § 1964 ........................................................................................... 9, 12

28 U.S.C. § 1367 ............................................................................................... 23

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Make the Road New York ("MTR"), an immigrant rights advocacy group, attempts to distort a disagreement between itself and defendants Thomas T. Hecht, P.C. (the "Hecht Firm"), Thomas T. Hecht and Leonard H. Hecht (collectively, "the Hechts"), former attorneys for the "individual plaintiffs," into a civil RICO claim to further MTR's political agenda. The plaintiffs wrongly seek to use the federal RICO statute to sensationalize disagreements over the interpretation of immigration laws and garden variety questions of client consent. The complaint's allegations boil down to a dispute over whether the Hechts' use of a heretofore successful legal process, available under the guidance issued by prior federal Administrations, to seek (and in hundreds of cases, successfully obtain) permanent resident status and work authorizations for non-citizen clients was a wise strategy. Although these plaintiffs may take issue with the fact that such relief no longer is as readily available, their complaint should not be with the Hechts but with the Trump Administration's recent changes in immigration law, which have upended years of policies that encouraged undocumented individuals to come out of hiding. The fact that new policies may increase the chances that the plaintiffs, who entered or remained in this country illegally, will not receive beneficial relief does not retroactively turn the Hechts' well-meaning actions into a fraud. The plaintiffs'—and particularly MTR's—attempts to recast past attorney-client decisions into a racketeering conspiracy and defame the reputation of two attorneys who have dedicated years to trying to help undocumented individuals in order to advance MTR's agenda is legally inappropriate.

Specifically, the complaint fails to establish standing for any of the plaintiffs. The individual plaintiffs have not alleged the required injury to "business or property." MTR does not allege that the Hechts (as opposed to the individual plaintiffs' illegal entry or the current

administration's adamant about-face) were the proximate cause of *any* injury to MTR or its members. Plaintiffs' substantive RICO allegations also fall far short of the statutory requirements, as the complaint fails to plead the predicate acts of mail fraud and visa fraud with the required particularity, alleging only that the Hechts supposedly failed fully to inform their clients of legal strategy without pleading any facts alleging that they acted with the required fraudulent intent. Nor can plaintiffs establish the required RICO enterprise. The novel "association in fact" theory on which they rely fails to establish the required relationship between the Hechts and defendant Guerrero. The corporate enterprise alternative fails to allege the required distinctness, as the pleadings merely demonstrate that the Hechts undertook the ordinary business activities of the law firm, such as advising clients on the law. Plaintiffs' attempt to twist ordinary attorney advice into a RICO claim should be rejected.

## BACKGROUND

Thomas Hecht is an 88-year old Holocaust survivor who has been a well-respected practitioner of immigration law for over fifty years. (*See* Declaration of Catherine M. Foti dated July 27, 2018 ("Foti Dec.") ¶ 3). After spending years in hiding during World War II, Thomas Hecht immigrated to the United States and made helping other immigrants obtain a safe haven to live and raise their families his vocation. (*See* Thomas T. Hecht, *Life Death Memories* (2002)). Thomas was joined in practice by his son Leonard, who have together obtained favorable immigration results for thousands of clients. (*See* Foti Dec. ¶ 4). The Hechts always have conformed their actions to the laws, and as of today, have never had a single ethical complaint decided against them. (*See* Foti Dec. ¶ 16).

In recent years, the Hechts successfully have helped hundreds of clients upgrade their immigration status by seeking either permanent resident status or authorization to legally work in the country. (*See* Foti Dec. ¶¶ 9, 15). These undocumented individuals came to the Hechts

because they wanted to stop lurking in the shadows, and instead obtain better job prospects and a more secure life. The Hechts did not solicit their business. Instead, as evidenced by the stories of many individual plaintiffs, clients came to the Hechts through referrals from past clients who were happy with the results the Hechts achieved and therefore recommended the Hechts to friends and family. (*See, e.g.,* Compl. ¶¶ 124, 277).

For clients seeking to improve their status, current immigration law provides only limited avenues to appear before the court to raise meritorious claims. One avenue to do so is to file a truthful, even if likely unsuccessful, application for asylum. Although asylum is largely relief sought within one year from entry into this country, the law allows for applications to be made after one year has passed with the existence of "changed circumstances." *See* 8 U.S.C. § 1158(a)(2)(D). When meeting with each potential client to learn about their situation, the Hechts—like other attorneys who recommended such a course—would screen to determine if the individual had a plausible asylum claim, including ensuring that clients came from countries that provided a legitimate basis for asylum, and, if they had been in the country for more than one year, circumstances had developed which made them now eligible for asylum. As even the plaintiffs acknowledge, the asylum applications submitted by the Hechts contained only truthful information. If, as often was the case, the asylum applications were denied, the case would then go before the Immigration Court, where they could present their strong claims for other affirmative relief. The fact that the practice was a recognized, legitimate procedure used by many immigration attorneys is reflected in an ethical opinion published by the American Immigration Lawyers Association. (AILA Opinion, annexed to Foti Dec. as Ex. 1).

The position that the Hechts intended to defraud clients about the nature of the application submitted on their behalf is spurious. Anyone who submits an asylum application

receives *multiple* forms of notice identifying the application as one for "asylum." As several plaintiffs acknowledge, each applicant personally receives a notification from the government indicating receipt of their "complete Form I-589 asylum application" (*see* Foti Dec. Ex. 2), typically within a month of the form's submission (s*ee, e.g.,* Compl. ¶¶ 130-132), followed by other notices informing plaintiffs of required fingerprinting and interviews related to their *asylum* applications.[1] (*See* Foti Dec. Ex. 3). It defies logic that the Hechts supposedly would attempt to hide from hundreds of clients the fact that an asylum application was filed insofar as each client shortly would receive numerous official notices of such a filing.

Most of the Hechts' asylum clients were eligible for Cancellation of Removal, a law giving the Immigration Court the authority to grant permanent residency status (including a green card) to applicants who could demonstrate that (1) they had been present in the United States for ten years, (2) they were of good moral character and lacked certain criminal convictions, and (3) their removal would result in "unusual hardship" to a U.S. citizen family member. *See* 8 U.S.C. § 1229(b). No legal statute or precedent suggests that seeking relief under the Cancellation of Removal law, which provides permanent residency to undocumented individuals based in part on their presence in the country for ten years, is in any way a "scam." Indeed, the Hechts used this provision to obtain green cards for over 200 clients in recent years. (*See* Foti Dec. ¶ 9).

Both the George W. Bush Administration and the Obama Administration were more open to the concept of legalizing undocumented immigrants. (*See* Oct. 24, 2005 Howard Memo. at 6, annexed to Foti Dec. as Ex. 4). During the Obama Administration, the government also encouraged immigrants whose cases were not as likely to meet all the requirements under § 1229(b) to still come forward and seek to improve their status. The Obama Administration

---

[1] The English word, "asylum," is very similar to the Spanish translation, "asilo."

established a clear public policy encouraging the use of a process called "Prosecutorial Discretion," which allowed qualifying individuals to close their outstanding immigration proceedings while also obtaining legal work authorization and the ability to seek additional relief in the future. (*See* Mar. 2, 2011 Morton Memo. at 4, annexed to Foti Dec. as Ex. 5 (encouraging use for "immediate family members of U.S. citizens"); Nov. 20, 2014 Johnson Memo. at 6, annexed to Foti Dec. as Ex. 6 (encouraging discretion due to "length of time in the U.S." and "family . . . in the U.S.").  The fact that Prosecutorial Discretion was more freely given allowed attorneys to make arguments for clients who may not have had as strong a case for Cancellation of Removal as others but who had compelling cases.  The Hechts obtained relief for over 300 clients by means of Prosecutorial Discretion. (*See* Foti Dec. ¶ 15).  Thus, the complaint's citation to the Hechts' involvement with nearly 1,000 asylum applications (Compl. ¶ 103) misleadingly ignores the many positive results obtained for similar clients.

Unfortunately, once Trump became President, the Bush-Obama-era policies that had provided so many immigrants with an opportunity to legalize their status were turned on their head.  In this context the plaintiff MTR apparently decided to find a sacrificial lamb to put undocumented individuals on notice through highly publicized impact litigation that this prior road to legalization was no longer as fruitful.  MTR chose the Hechts. Without seeking even to speak to the Hechts to obtain their position on the legitimacy of using existing laws to advance their clients' interests, MTR unleashed a firestorm of false allegations against the Hechts, turning a difference of opinion on the appropriateness of a legitimate avenue of redress for undocumented individuals into a cause célèbre for its own political purposes. Simultaneous with the filing of this lawsuit, MTR inappropriately led a press conference for television and posted to social media a barrage of false and defamatory statements about the Hechts (*see* Foti Dec. ¶ 2),

which will form the basis of counterclaims against MTR should this case go forward. MTR unfortunately has manipulated this case in a way that has pitted the Hechts against the very people they were endeavoring to help, to the detriment of both sides.

**ARGUMENT**

The allegations in the complaint set forth nothing more than an unpled and unprovable legal malpractice claim, which does not meet the activity required to state a RICO claim. Neither the individual plaintiffs nor MTR pleads any injury sufficient to establish RICO standing. Plaintiffs also fail to set forth allegations pleading the predicate acts with the required particularity. Moreover, the complaint fails sufficiently to allege the necessary relationship between the Hechts and Guerrero to establish an "associated in fact" enterprise, nor does it plead the required distinctness between the Hechts and their firm to establish the corporate enterprise alternative. Because plaintiffs' alleged civil RICO claim fails on multiple grounds, the related RICO conspiracy claim also fails. Dismissal of the federal claims therefore mandates dismissal of the state claims, as this Court should not exercise supplemental jurisdiction over those claims. Therefore, the complaint should be dismissed in its entirety.

The Hechts, who for years zealously and successfully have represented thousands of undocumented aliens at reasonable rates, unequivocally deny the allegations made by plaintiffs; however, because they seek to dismiss the complaint at the pleadings stage, for the purposes of this motion only, they are required to accept the plaintiffs' allegations as true. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Yet in evaluating the complaint, the Court should not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, courts "strive to flush out frivolous RICO allegations at an early stage of the litigation" because "the mere assertion of a

RICO claim has an almost inevitable stigmatizing effect on those named as defendants."

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted).

I.      **Plaintiffs Lack RICO Standing Because the Individuals Fail to State A Cognizable Injury and MTR Fails to State that the Hechts Caused Them Any Injury**

A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Each plaintiff is required to establish (1) a violation of the RICO statute; (2) an injury to business or property; and (3) proximate causation. *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 120 (2d Cir. 2013) (citation omitted). A plaintiff's failure to plead any element requires dismissal of the RICO cause of action. *See, e.g., Lynch v. Amoruso*, 232 F. Supp. 3d 460, 469 (S.D.N.Y. 2017).

A. **None of the Individual Plaintiffs' Alleged RICO Injuries**

The individual plaintiffs allege three supposed categories of RICO injuries: (1) harm due to risk of deportation; (2) mental and emotional distress; and (3) payment of legal fees to the Hechts. None of these alleged injuries are the required injury to business or property. Plaintiffs further have failed to demonstrate that the Hechts proximately caused any increased risk of deportation or mental distress, which were instead caused by the plaintiffs' own actions.

i.      **Risk of Deportation Is Not A "Clear and Definite" RICO Injury and was Proximately Caused by the Plaintiffs' Status, Not by the Hechts**

Vague allegations that the individual plaintiffs were "placed into the deportation pipeline" (Compl. ¶ 121) fail to state a "clear and definite" injury to the Plaintiffs' business or property, *see First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("a cause of action does not accrue under RICO until the amount of damages becomes clear and definite"), because plaintiffs cannot allege any quantifiable harm from the fact that legal

proceedings were commenced.  Although plaintiffs suggest that they are suffering harm just by being before the Immigration Court, they fail to acknowledge that their appearance before the Court could result in a positive outcome, such as the receipt of permanent resident status. Indeed, under the Trump Administration, the Hechts successfully have obtained Cancellation of Removal for dozens of clients.  Even if legal proceedings might result in future harm to plaintiffs, today any injury from these proceedings remains speculative, and, therefore, is not ripe.  *See Town of Mamakating, N.Y. v. Lamm*, No. 15-cv-2864 (KBF), 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015), *aff'd sub nom.* 651 Fed. App'x 51 (2d Cir. 2016) (injury to promotion of future development not cognizable because it alleged "inchoate or speculative harms.")

The vague allegation that the Hechts' actions increased plaintiffs' risk of deportation because plaintiffs now "face the threat of referral to immigration court and deportation" (Compl. ¶ 121) similarly fails to state a recoverable injury.  The fact that an action was riskier than plaintiffs appreciated does not establish RICO standing.  *See Dornberger v. Metro. Life Ins. Co.,* 961 F. Supp. 506, 522 (S.D.N.Y. 1997) (recovery not available where plaintiff induced to enter into a transaction riskier than she originally believed); *see also First Nationwide Bank,* 27 F.3d at 768 (no actual injury where plaintiff has "additional risk of loss").

Additionally, the risk of deportation is due to plaintiffs' illegal status in the country, and has not been proximately caused by the Hechts.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  "A plaintiff has not pleaded proximate cause 'when factors other than the defendant's [act] are an intervening direct cause of a plaintiff's injury,' because 'that same injury cannot be said to have

occurred by reason of the defendant's actions.'" *Kerik v. Tacopina,* 64 F. Supp. 3d 542, 557 (S.D.N.Y. 2014), citing *First Nationwide Bank,* 27 F.3d at 769.

Here, the most direct cause of the plaintiffs' risk of deportation is the fact that, as plaintiffs admit in the complaint, they each are present in the United States illegally. (*See* Compl. ¶ 1). The individual plaintiffs' lack of legal status, and not the Hechts' efforts to improve their status, is the direct cause of any risk of deportation. Although the Trump Administration's change in immigration enforcement tactics may have increased the risk of any undocumented individual's removal from the United States, this is due solely to the fact that plaintiffs entered or remained in the country without valid immigration status. Because risk of deportation "could have resulted from factors other than [the] alleged acts of fraud," namely, from the plaintiffs' immigration status, the plaintiffs have failed to allege that the Hechts were the proximate cause of any injury. *Anza*, 547 U.S. at 459.

### ii. Emotional Distress is Not A Cognizable RICO Injury

Plaintiffs' allegations of "mental and emotional distress" (*see* Compl. ¶ 122) similarly are not recoverable RICO injuries. *See, e.g., Angermeir v. Cohen,* 14 F. Supp. 3d 134, 152 (S.D.N.Y. 2014) (neither emotional distress nor mental anguish constitutes an "injury" under § 1964(c)). Accordingly, plaintiffs do not have standing to bring a RICO claim. *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612-13 (S.D.N.Y. 2015) ("Personal damages, emotional damages, and physical damages … are insufficient [to establish RICO standing].")

The plaintiffs make the preposterous argument that the cause of their "stress" is the Hechts, as opposed to their own illegal entry, their need, with the aid of family, friends, and employers, to hide from the authorities to avoid detection, and the Trump Administration's aggressive removal tactics. Although the plaintiffs understandably may be facing stress, the complaint does not even attempt to allege that this stress was caused "directly" by the Hechts

actions.  *See Anza*, 547 U.S. at 461.  Indeed, each of the individual plaintiffs who sought help from the Hechts already faced stresses from multiple sources, beginning with their own illegal entry, which for some involved the use of coyotes or other smugglers, or decision to illegally remain in the country.  The individual plaintiffs' immigration status is what puts them, along with the family members and employers who help them, at risk, creating a high-stress lifestyle. The Trump Administration's emphasis on using aggressive enforcement tactics to detain undocumented individuals has only increased this stress. Because the alleged stress has resulted from a number of factors other than the Hechts' alleged action, they cannot be the proximate cause of the individual plaintiffs' alleged injuries.

### iii.  Payments of Legal Fees Are, At Most, Personal Injuries, Not The Required Injuries to Business or Property

Plaintiffs' payment of legal fees to the Hechts for legal services also fails to state a RICO injury because any loss is purely personal in nature.  In order to establish standing, a plaintiff must suffer an injury to his or her "business or property." *Sedima,* 473 U.S. at 496; *see also Hawaii v. Standard Oil Co. of Cal.,* 405 U.S. 251, 264 (1972) ("refer[ring] to commercial interests or enterprises").  Accordingly, "injuries [that] are personal in nature" do not constitute injury to "business or property" under RICO.  *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229, 241 (2d Cir.1999); *see also Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (2d Cir. 1984), *vacated on other grounds,* 473 U.S. 922 (1985) (individual could not recover for personal injuries but could recover for damage to building).

Here, the payment of legal fees relates to a purely personal complaint, based upon the plaintiffs' allegations that the legal advice they received from the Hechts was somehow faulty. The best way to demonstrate the personal nature of these alleged damages is in the context of legal malpractice claims, which is essentially the claim being raised by the plaintiffs, even if they

have not actually pled it.[2]  In the legal malpractice context, the underlying legal fees, paid for

services that were rendered by the law firm, are not recoverable.  *See Baker v. Dorfman*, 239

F.3d 415, 426 (2d Cir. 2000).  Similarly here, the underlying legal fees that the individual

plaintiffs paid to the Hechts for services they acknowledge having received cannot form the basis

of a RICO injury.  The actual injury the plaintiffs allege is a purely personal harm related to their

individual immigration status, including the claimed emotional distress and supposed increased

risk of deportation described above, not the payment of fees.  *See Gotlin v. Lederman*, 367 F.

Supp. 2d 349, 357 (E.D.N.Y. 2005), *aff'd sub nom* 483 Fed. App'x 583 (2d Cir. 2012)

(allegations were "personal in nature, notwithstanding their incidental economic loss . . . as

payment for defendants' service.")  The fact that money was paid is not sufficient to overcome

the personal nature of the injuries.  *See Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 391

(S.D.N.Y. 2000), *aff'd sub nom.* 1 Fed. App'x 7 (2d Cir. 2001) (spending money defending

against lawsuit is not required injury to business or property).  As such, any monetary harm

experienced by plaintiffs is insufficient to establish standing.[3]

### B.  MTR Fails to Allege Any Actual Injury Caused by the Hechts

Plaintiff MTR also lacks standing to bring a RICO claim, either on behalf of the

organization or on behalf of its members and clients.  It too has failed to allege any injury

proximately caused by the Hechts' actions.

---

[2] Plaintiffs cannot even meet the standard required of legal malpractice: proof by a preponderance of the evidence that with different representation they would have obtained asylum or permanent residency.  *See Diamond v. Sokol*, 468 F. Supp. 2d 626, 633 (S.D.N.Y. 2006) ("New York law requires that the plaintiff . . . demonstrat[e] that 'but for' the attorney's conduct the client would have prevailed in the underlying matter." (internal quotations omitted)).

[3] The same holds for the costs of the "new legal representation" alluded to the complaint. (*E.g.* Compl. ¶ 195). Although the complaint fails to detail why any such representation was needed, the retention of other attorneys for the same immigration purposes remains a personal expense.

### i. MTR Does Not Plead Injury to Its Business Caused by the Hechts

MTR does not have any direct relationship with the Hechts or the Hecht's law firm. It is not in privity with the Hechts, and cannot demonstrate standing on that basis. Because it cannot establish standing as a party directly injured by the Hechts, MTR must instead establish standing as a competitor harmed by the Hechts. MTR, however, cannot allege any injury to its business, as it suffered no financial loss from the Hechts' actions. "Courts have required that the plaintiff show concrete financial loss in order to show injury under RICO." *Kerik,* 64 F. Supp. 3d at 560 (internal quotation marks omitted). Indeed, MTR fails to allege *any* financial loss of any kind suffered by the organization that it can tie to the Hechts' actions, mandating dismissal of its claim. *See Watkins v. Smith*, No. 12-cv-4635 (DLC), 2012 WL 5868395, at *6 (S.D.N.Y. Nov. 19, 2012) (Cote, J.) (failure to allege that defendant's actions "caused any damage to [plaintiffs'] property or business" warranted dismissal).

Much of the supposed harm MTR alleges is merely the use of MTR's resources to provide the same immigration services that the organization provides in its ordinary course. (*See* Compl. ¶ 495 (explaining MTR's services include "provid[ing] individualized assistance to immigrants facing deportation")). The fact that MTR has "dedicate[d] significant resources to mitigating the harm [supposedly] caused by Defendants" (Compl. ¶ 496), even if true, does not provide grounds for standing. In a similar vein, supposedly requiring a party to "waste considerable time and effort" in response to the defendants' actions "does not constitute an 'injury' within the meaning of § 1964(c)." *Angermeir*, 14 F. Supp. 3d at 152.

Finally, MTR's allegations that it provided ordinary legal services and completed standard outreach activities fail because the Hechts did not proximately cause these actions. The complaint lacks a single allegation that any of MTR's "presentations," "interviews," or creation of "educational materials" (Compl. ¶¶ 501-503) were undertaken *because of* the Hechts. MTR

does not even claim that any presentation, interview, or material was specific to the Hechts, as opposed to any other attorney utilizing the same procedures.  Because MTR would provide these legal services in the ordinary course, it cannot demonstrate any "injury" that was undertaken solely because of the Hechts' actions.  *Anza*, 547 U.S. at 459 ("the alleged harm could have resulted from factors other than [the] alleged acts of fraud.")

### ii. MTR Cannot Bring A Claim on Behalf of Its Members Because They Each Face Individual Injuries

Although MTR purports also to assert claims "on behalf of its members, clients and all similarly situated individuals" (Compl. ¶ 492), the complaint fails to allege facts that even are remotely sufficient to establish standing on their behalf.  For an organization to assert the rights of its members collectively, the organization must show, among other requirements, that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1997).  Here, any purported harm to MTR's members only could arise from individual attorney-client relationships and therefore is member-specific.  Because any alleged injuries to MTR's members involve the specific advice the Hechts gave to individual clients, the injuries are "'not common to the entire membership, nor shared by all in equal degree,' so that 'both the fact and extent of injury would require individualized proof.'"  *Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 45 F.3d 58, 61 (2d Cir. 1995), citing *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975).  Indeed, that is precisely why individual plaintiffs *are* participating in the lawsuit.

MTR does not make any allegation that the Hechts caused any injury common to its entire membership.  Indeed, MTR's members include not only undocumented individuals but also citizens interested in immigration rights, housing rights, and transgender rights.  Thus, the vast majority of MTR's "22,000 dues-paying members" (Compl. ¶ 494) certainly did not have

any relationship whatsoever with the Hechts, nor could those members have plausibly been affected by the Hechts' alleged scheme. Accordingly, MTR cannot demonstrate standing to raise a claim on behalf of this group. MTR's claims should, therefore, be dismissed.

## II. Plaintiffs Substantive RICO Claim Fails Because the Plaintiffs Fail to Plead Mail and Visa Fraud with Sufficient Particularity

Plaintiffs' RICO allegations rely on the predicate acts of mail and visa fraud stemming from the Hechts' submission of asylum applications on the individual plaintiffs' behalf, yet the complaint fails adequately to allege these actions with the particularity required when pleading claims based on fraud. The stringent requirements of Rule 9(b) apply to predicate acts sounding in fraud, which requires that the "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("[T]he heightened pleading standards of Fed. R. Civ. P. 9(b) . . . also appl[y] to allegations of fraudulent predicate acts supporting a RICO claim.") In addition, the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999). "[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions," *Plount v. American Home Assurance Co., Inc.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987), because civil RICO was not intended to "federalize garden-variety state common-law causes of action." *Gross v. Waywell,* 628 F. Supp. 2d 475, 488 (S.D.N.Y. 2009). Thus, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Cohen v. Cohen,* 993 F. Supp. 2d 414, 422-23 (S.D.N.Y. 2014) (citation and quotations omitted). Allegations where mail or wire fraud is the predicate act "merit particular scrutiny" because "the use of mail . . . to communicate is not in and of itself

illegal, unlike other predicate acts such as murder or extortion." *AFSCME Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.,* 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2013).

### A.  The Mail Fraud Allegations Lack Any Claim of Improper Intent

"A proper pleading of predicate acts based on mail . . . fraud requires an allegation of an underlying fraudulent scheme," *Morin v. Trupin,* 711 F. Supp. 97, 105 (S.D.N.Y. 1989), which, in turn, requires (1) the existence of a scheme to defraud; (2) fraudulent intent on the part of the defendant; and (3) the materiality of the representations. *United States v. Autuori,* 212 F.3d 105, 115 (2d Cir. 2000).  Rule 9(b)'s requirement of a strong inference of fraudulent intent may be established either by alleging (a) facts to show that defendants had both motive and opportunity to commit fraud, or (b) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Here, plaintiffs fail to set forth anything more than conclusory allegations that the Hechts acted with an improper motive and that the Hechts knowingly misled their clients about the law. Moreover, the allegations involving an improper motive to obtain referrals are not supported by any facts suggesting that the Hechts were engaged in a fraud, but merely involve allegations that would form a perfectly appropriate referral relationship even if true.

Although plaintiffs provide the conclusory justification that the Hechts knowingly told clients they could apply for immigration relief under the wrong law so that they could profit from the attorneys' fees paid by the individual plaintiffs (*e.g,* Compl. ¶ 63), such general allegations that a party would profit are insufficient to allege scienter under Rule 9(b).  *See Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 Fed. App'x 679, 681 (2d Cir. 2012) (failed to ascribe "any particular motive for committing fraud beyond a general profit motive common to all corporations"); *In re Take-Two Interactive Sec. Litig.,* 551 F. Supp. 2d 247, 273 (S.D.N.Y. 2016) ("generalized motive to profit through increased [] compensation" was insufficient).

Moreover, the complaint actually undercuts the allegations that the Hechts were motivated by financial profit, as it sets forth facts demonstrating that the Hechts did not require the individual plaintiffs to pay the full fee quoted for the representation up front, and instead received only a small percentage of the total fee for work actually performed.  Significantly, twenty-five of the twenty-six individual plaintiffs admit to paying the Hechts significantly less in attorneys' fees than the total amount they were cited at their initial consultation.

Nor does the complaint plead facts evidencing that the Hechts consciously misbehaved or recklessly gave Plaintiffs incorrect legal advice.  The Plaintiffs' allegations of fraud center on what is essentially a dispute over the applicable law, alleging that the Hechts told clients that they could obtain work authorization or legal permanent resident status through an application process that plaintiffs claim does not exist and failed to tell clients that the process the Hechts utilized was to apply for asylum.  (*See* Compl. ¶¶ 55-56).  Plaintiffs base their theory on one conclusory statement, that "[t]he Defendants knew that representation was false . . . ." (Compl. ¶ 56).  Aside from failing to provide any specificity as to *what* aspect of their alleged representation was false, plaintiffs crucially fail to make any allegations showing that the Hechts knowingly misled their clients.[4]  Plaintiffs must do more than allege inferences that potentially could support their theory of liability; instead, they must show evidence demonstrating that the Hechts' knowingly told their clients to use a legal process (asylum) that they knew not to be the law.  Moreover, plaintiffs must show the Hechts' statements were more than an honest mistake or dispute over the law; they must show that the Hechts purposefully misrepresented the legal process to the plaintiffs.  The complaint fails to do so.  *See Boritzer v. Calloway*, 10 CIV. 6264 JPO, 2013 WL 311013, at *8 (S.D.N.Y. Jan. 24, 2013) (complaint "never specifically allege[d]

---

[4] Should this action continue, the Hechts will demonstrate that they followed a professionally-recognized legal process.

how . . . [d]efendants' statements and representations were part of a scheme to defraud, rather than merely bad business advice.")  Indeed, were the interpretation of statutes and legal precedent sufficient to establish fraudulent intent, every lawyer could be charged with mail fraud, and the protections provided by Rule 3.1 of the New York Rules of Professional Conduct to seek extension, modification or reversal of the law on behalf of clients would be nullified.[5]

### B. The Plaintiffs Fail to State a Visa Fraud Claim as the Complaint Fails To Allege Any False Information in the Asylum Applications

To establish visa fraud, plaintiffs must show that the Hechts "knowingly subscribe[d] as true, any false statement with respect to a material fact in any application . . . required by the immigration laws . . . or knowingly present[ed] any such application . . . which contains any such false statement or which fails to contain any reasonable basis in law or fact . . . ." 18 U.S.C. § 1546.  Pleading visa fraud as a RICO predicate act similarly is subject to Rule 9(b)'s heightened pleading standard.  *See Jus Punjabi, LLC v. Get Punjabi Inc.*, No. 1:14-cv-3318 (GHW), 2015 WL 2400182 at *7 (S.D.N.Y. May 20, 2015*), aff'd sub nom.* 640 Fed. App'x 56 (2d Cir. 2016).

Plaintiffs fail to identify a single false statement submitted in the individual plaintiffs' asylum applications, and therefore do not even come close to pleading this predicate act with the required particularity.  Plaintiffs instead attempt to treat this case as an action for legal malpractice by suggesting the applications contained insufficient information to support an asylum claim.  (*See* Compl. ¶¶ 60-61).  The relevant question, however, is not whether the applications contained sufficient information or whether the claims ultimately would be successful, but whether the Hechts knowingly submitted false statements.  The Hechts did not do so.  The complaint lacks any allegation that they did.

---

[5] Rule 3.1 protects a lawyer's duty to make a "good faith argument[s] for an extension, modification, or reversal of existing law" on behalf of their clients.  The Hechts conduct fits squarely within this requirement, as they made truthful and good faith arguments to extend the law to allow that their clients should be entitled to asylum.

Because the plaintiffs have not and cannot allege any false representations in the individual plaintiffs' asylum applications, they instead resort to a general statement that the Hechts supposedly committed visa fraud by "knowingly preparing asylum applications on behalf of Plaintiffs *without regard to the truth or falsity* of the information contained therein . . . ." (Compl. ¶ 94) (emphasis supplied). Yet aside from making this bold statement, which merely reiterates the legal standard for visa fraud, plaintiffs set forth no specific facts alleging that the Hechts disregarded the truth of the statements they were submitting. Far from it, the plaintiffs acknowledge that the Hechts asked questions of each individual plaintiff, and each individual plaintiff admits to answering those questions truthfully. (*E.g.* Compl. ¶ 124).[6]

## III.  The Enterprise Theories Both Fail to Allege the Requirements of a RICO Enterprise

Plaintiffs plead their RICO allegations as two inconsistent but alternative enterprises, neither of which is proper. Under plaintiffs' primary theory, the Hechts, their firm, Sylvia's Translation Service,[7] and Guerrero—an accountant not affiliated with the Hecht firm—gathered together to form an "associated in fact" enterprise, yet the complaint fails to demonstrate any relationship between the Hechts and Guerrero, or allege the required separateness between the conduct undertaken by the Hechts and Guerrero and the alleged RICO scheme. Plaintiffs' second attempt to plead a corporate enterprise—defining the law firm as the enterprise, which is directed by the Hechts and Guerrero—fails to demonstrate the required distinctness, as they do not allege that the Hechts took any actions aside from day-to-day business activities of their firm.

---

[6] The most Plaintiffs allege is that the final applications were not reviewed with the clients. (*E.g.* Compl. ¶ 131). Such allegations contain no facts regarding the contents of the applications as required to state such a claim.

[7] Sylvia's Translation Service ("Sylvia's") is a d/b/a entity of the Hecht Firm and is not a distinct legal entity. It therefore cannot function as an "associated entity" for the purpose of alleging a RICO enterprise. *See Healey v. Pyle,* No. 89-civ-6027 (JSM), 1992 WL 80775, at *4 (S.D.N.Y. Mar. 31, 1992) (enterprise alleged as "Barbara Pyle dba Carmine Properties" did not state "a new entity distinct from Barbara Pyle.")

**A. The Claimed "Association in Fact" Enterprise Fails to Demonstrate the Required Relationship between, or Separateness from, the Associated Parties**

When otherwise unrelated individuals or entities are grouped together in an attempt to form an "association in fact" enterprise, the Court must analyze the "hierarchy, organization, and activities" of the alleged association to determine whether "its members functioned as a unit." *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 174-75 (2d Cir. 2004). The failure to make "concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate defendants functioned as a unit" or that they "had a common interest in the success of the so-called enterprise," will defeat the plaintiff's RICO claim. *Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC,* No. 11-civ-7801 (PAE), 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012). Accordingly, the failure to plead with specificity "the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal." *Id.*; *see also Foster v. 2001 Real Estate*, 14 CIV. 9434 (RWS), 2015 WL 7587360, at *4 (S.D.N.Y. Nov. 24, 2015) (complaint was "entirely silent as to the internal workings or organization of the enterprise"); *101 McMurray, LLC v. Porter*, No. 10-cv-9037 (CS), 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) (plaintiff failed to plead facts showing that enterprise members functioned as a unit).

Here, Plaintiffs' conclusory allegations of an "association in fact" enterprise fall far short of the required pleadings. Plaintiffs put forth no specific allegations of a relationship between the Hechts and Guerrero. The only allegation setting forth evidence of an interpersonal relationship is plaintiffs' conclusory statement, made upon information and belief, that "Guerrero has a reciprocal referral relationship with Defendant Law Firm." (Compl. ¶ 80). Even assuming that such a reciprocal referral relationship existed (which it did not), plaintiffs failed to allege any facts demonstrating the "mechanics of the interactions" between the Hechts and Guerrero or

demonstrating that the parties had a "common interest in the success" of the alleged scheme. *Cont'l Petroleum,* 2012 WL 1231775, at *6. Indeed, the complaint fails even to allege a single instance of communication between the Hechts and Guerrero. Thus, plaintiffs have failed properly to allege an "association in fact" relationship.

Nor does the complaint demonstrate that the alleged "association in fact" established an ongoing relationship. Of the twenty-six individual plaintiffs, the complaint alleges that only four had any contact with Guerrero. Apparently, Guerrero referred three of those four to the Hechts, within a four-month period in 2015: that ended over three years ago. (*See* ¶¶ 244 (June 2015), 390 (April 2015), 416 (March 2015)). Although the fourth plaintiff who allegedly spoke with Guerrero actually had been referred to the Hechts through another source (*see* Compl. ¶ 228), even including this fourth plaintiff as evidence of an on-going relationship, however, only extends the claim to a nine-month period ending in June 2015—far short of a continuing relationship. Thus, plaintiffs fail to allege any facts providing a basis to believe the relationship was ongoing, or that any relationship continues today. *See, e.g., Town of Mamakating, N.Y.,* 2015 WL 5311265 at *9 ("Plaintiffs' allegations provide no basis for inferring . . . that the defendants formed an ongoing organization . . . .")

The "association in fact" enterprise theory also fails for the separate reason that the allegations lack the required "separateness" between the enterprise (here, the Hechts, the Hecht Firm, and Guerrero) and the alleged RICO activity (supposed referrals as part of the alleged "scheme"). An enterprise must exist "separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also First Capital Asset Mgt., Inc.,* 385 F.3d at 174 (requiring detailed course of fraudulent conduct "separate and distinct from the alleged predicate racketeering acts themselves.")

The plaintiffs do not include a single factual allegation showing that the enterprise members had any real contact, nor that the parties exchanged payments. The entirety of plaintiffs' allegations about the relationship between the enterprise members consists of allegations about referrals from Guerrero to the Hechts, which also form the basis of the alleged racketeering activity supposedly committed by the enterprise. Yet if referrals were themselves sufficient to establish a RICO claim, nearly every attorney and business professional could be said to be part of an "association in fact" enterprise; the RICO statute was not intended to apply so broadly. Plaintiffs do not (and cannot) cite a single action involving the Hechts and Guerrero, aside from the referral allegations. This failure to plead allegations of separateness is itself grounds for dismissal. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 545 (W.D.N.Y. 2014); *see also Eaves v. Designs for Fin., Inc.,* 785 F. Supp. 2d 229, 263 (S.D.N.Y. 2011) (parties came together strictly for the purpose of creating allegedly fraudulent tax shelters.)

**B. The "Corporate Enterprise" Alternative Lacks Distinctness Because It Involves the Hecht's Participating in the Firm's Ordinary Business Activities**

Under plaintiffs' second, alternative enterprise, the Hecht Firm is defined as the enterprise pursuant to 18 U.S.C. § 1961(4), with defendants Thomas Hecht, Leonard Hecht and Luis Guerrero as the persons directing the supposed "Corporate Enterprise." Again plaintiffs fail to plead facts showing that Guerrero had a relationship with the Hechts or the Hecht Firm, let alone any facts supporting the required showing that Guerrero "participate[d] in the operation or management of the enterprise itself." *See Amalgamated Bank of New York v. Marsh,* 823 F. Supp. 209, 219-20 (S.D.N.Y. 1993) ("no suggestion that [defendant] ever 'directed' anyone else to do anything.") Given the lack of allegations that plausibly could support Guerrero's role, plaintiffs' Corporate Enterprise theory actually involves only Leonard and Thomas Hecht

directing the affairs of the Hecht Firm, a theory that fails to allege the required distinctness between the Hechts and the Corporate Enterprise (their firm).

Although individuals and corporations have been held to be legally distinct entities, *see Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158 (2001), this Circuit has "rejected the idea that a RICO enterprise may consist 'merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'" *Cruz*, 720 F.3d at 121 (internal citation omitted); *see also U1IT4less, Inc. v. FedEx Corp.,* 157 F. Supp. 3d 341, 345 (S.D.N.Y. 2016), *aff'd,* 871 F.3d 199 (2d Cir. 2017). In *Cruz*, the Second Circuit found allegations that a corporation's employees directed the enterprise by carrying on the corporation's regular affairs to be insufficiently distinct, noting that "distinctness cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees." *Id.*

Here, plaintiffs similarly attempt to end-run the distinctness requirement by alleging an enterprise that, after removal of Guerrero, consists only of the Hechts and their law firm. The sole allegations of Thomas and Leonard Hecht's direction of the Corporate Enterprise's scheme involves the Hechts' representation of clients—a foundational activity of any law firm. (*See* Compl. ¶ 72). Similarly, the allegations related to the firm's unspecified employees clearly involve the conduct of the firm's "ordinary business," including communicating with clients, submitting asylum applications, and processing payments from clients. (*See* Compl. ¶ 75). The Hechts' involvement in such ordinary business activities in service of their clients fails to establish a distinct enterprise, and is merely another unsuccessful attempt to elevate ordinary fraud allegations to the level of a civil RICO claim.

**IV.    The Failure of the Substantive RICO Claim Dooms the Civil Rico Conspiracy Claim**

The failure of plaintiffs' substantive civil RICO claim under 18 U.S.C. § 1962(c) is also fatal to the civil RICO conspiracy claim under § 1962(d).  Where a plaintiff fails to plead a substantive civil RICO violation, its civil RICO conspiracy claim also fails. *See First Capital,* 385 F.3d at 182; *see also FindtheBest.com, Inc. v. Lumen View Tech., LLC,* 20 F. Supp. 3d 451, 461 (S.D.N.Y. 2014) (Cote, J.) (dismissing RICO conspiracy claim where plaintiff failed to adequately plead predicate acts including mail fraud).

Even if plaintiffs had pled a substantive RICO claim, the complaint lacks the required allegations to state a viable RICO conspiracy claim because it does not allege any agreement between the Hechts and Guerrero to commit the predicate acts of mail or visa fraud.  "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, [the] complaint . . . must allege specifically such an agreement," including an agreement involving each of the defendants.  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  Here, no allegation is made of any agreement between the Hechts and Guerrero, let alone the required specific agreement to commit mail or visa fraud.  Instead, the complaint merely includes conclusory allegations that the defendants "agreed to the overall objective . . . to profit by taking advantage of immigrants" and "conspired to conceal" the alleged scheme (Compl. ¶¶ 106, 113).  These statements lack the necessary allegations that the parties agreed to commit the alleged predicate acts, without which the conspiracy claim fails.

**V.    The Court Should Decline to Exercise Jurisdiction or Dismiss the State Law Claims**

Upon the dismissal of federal claims, the district court has statutory authority and discretion to dismiss any pendant state claims.  28 U.S.C. § 1367(c)(3).  In the "usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—

will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).

Courts, including this one, are especially reluctant to exercise supplemental jurisdiction based

upon a dismissed civil RICO claim. *See, e.g., Watkins*, 2012 WL 5868395, at *7-8 (Cote, J.)

(declining to exercise supplemental jurisdiction over state law claims); *Vargas v. Choice Health

Leasing,* 2011 WL 1758619 at *3 (S.D.N.Y. May 9, 2011) (Cote, J.) (same).  The Court should

adhere to that practice.  Should the Court elect to retain supplemental jurisdiction over Plaintiffs'

claims based upon New York State law, however, the state claims also must be dismissed.

### A.     The Fraud-Based State Claims Fail Under Federal Rule 9(b)

Just as the RICO claims fail because of the failure to plead fraud with particularity, many

of the plaintiffs' state law claims fail as well. "Claims of common law fraud must satisfy the

requirements of Rule 9(b)." *Trinity Bui v. Indus. Enters. of Am.*, 594 F. Supp. 2d 364, 371

(S.D.N.Y. 2009).  Breach of fiduciary duty claims are subject to the heightened pleading

standard of Rule 9(b) because those claims "are based on fraud." *Meisel v. Grunberg*, 651 F.

Supp. 2d 98, 108 (S.D.N.Y. 2009) (citation omitted).  A claim of unjust enrichment too must

satisfy the particularity requirement of Rule 9(b) "where the alleged unjust enrichment is

premised on fraudulent acts." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.

Supp. 3d 467, 483 (S.D.N.Y. 2014) (citing *Hughes v. Ester C Co.,* 930 F. Supp. 2d 439, 471

(E.D.N.Y. 2013)).  For the reasons articulated above, *see* supra § II, the common law claims

should similarly be dismissed.

### B.     The N.Y. General Business Law Claim Must Be Dismissed Because Defendants' Alleged Conduct Was Not Directed at the Public at Large

To prove a claim under New York General Business Law Section 349, Plaintiffs must

show: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a

material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Plaintiffs fail to allege facts to establish the first element, which requires that "some harm to the public at large is at issue." *Dupler v. Costco Wholesale Corp*, 249 F.R.D. 29, 43 n.3 (E.D.N.Y. 2008). The statute "does not apply to a breach of a private contract affecting no one but the parties to the contract, because that conduct is not an act or practice affecting the public interest." *GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 2d 267, 282 (S.D.N.Y. 2005) (internal quotations omitted).

Plaintiffs' claim under Section 349 is merely an attempt to shoehorn individuals' claims under contract or tort into a statute that governs conduct affecting the public interest. Plaintiffs, however, have failed to allege that the Hechts engaged in public-facing conduct. According to the complaint, each of the individual plaintiffs approached the Hechts for legal advice. The Hechts provided legal advice that was *specific* to each of the individual plaintiffs' facts, not to the public at large. This legal advice was *sui generis*, pursuant to private contracts between the parties. The individual plaintiffs do not allege that Hechts in any way advertised immigration legal services that would cause harm to the public at large. The complaint does not allege any facts suggesting that the Hechts' representations of the individual plaintiffs were intended to affect the public interest, therefore, the Section 349 claim must be dismissed.

## CONCLUSION

For the reasons stated above, the Hecht Defendants respectfully request that the Court grant their motion to dismiss plaintiffs' complaint in its entirety. Additionally, for the reasons set forth in the Declaration of Catherine M. Foti, the Court should adopt Rule 3.6 as an order of the Court applicable to all counsel of record.

Dated: New York, New York
July 27, 2018

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By:   /s/ Robert J. Anello_____

    Robert J. Anello
    Catherine M. Foti
    Nicole L. Buseman
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Defendants Thomas T. Hecht, Leonard H. Hecht, and Thomas T. Hecht, P.C.*