UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
FRANCISCO GUZMAN, ROSARO AYALA, MANUEL    :
FLORES DOMINGUEZ, NELY OLMOS FLORES,      :
ERNESTO MEJIA GONZALEZ, ONEIDA TACUBA     :          18cv3947(DLC)
MEJIA, MARIO ENRIQUE MUNOZ, GREGORIO      :
PEREZ ORTEGA, PATRICIA PAVIA, ROSA        :          OPINION AND ORDER
PEREZ, ALICIO RAMOS, MARTIN TORRES        :
REYES, S.F.C., D.P.C., B.R.E., O.C.F.,    :
R.M.F., A.M.M., J.M., M.M., A.M.O.,       :
E.G.R., F.T.R., R.M.R., J.C.R., F.T.V., :
and MAKE THE ROAD NEW YORK,               :
                                         :
                         Plaintiffs,     :
                                         :
                 -v-                     :
                                         :
THOMAS T. HECHT & LEONARD H. HECHT,       :
                                         :
                         Defendants.     :
                                         :
----------------------------------------X

APPEARANCES:

For the Plaintiffs:
Lindsay Nash
Juan Basadre
Alexis Makrides
Nolberto Zubia
Jaynah Ross-Mendoza
Kathryn O. Greenberg Immigration Justice Clinic
Benjamin N. Cardozo School of Law
55 Fifth Avenue
New York, New York 10003

Amy S. Taylor
Kendal Nystedt
Jessica Young
Ariel Gould
Make the Road New York
301 Grove Street
Brooklyn, New York 11237

Abena Mainoo

Shannon Daugherty
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

For the Defendants:
Robert J. Anello
Catherine M. Foti
Peter R. Dubrowski
Morvillo Abramowitz Grand Iason & Anello P.C.
565 Fifth Avenue
New York, New York 10017

DENISE COTE, District Judge:

Defendants Thomas T. Hecht ("Thomas") and Leonard H. Hecht ("Leonard") (collectively, "the Hechts") have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims asserted against them in the first amended complaint ("FAC"). For the reasons that follow, that motion is granted in part.

## Background

The following facts are drawn from the FAC and are assumed to be true for the purposes of this motion. The Hechts are licensed attorneys who primarily practice in the area of immigration law. Both are affiliated with the firm Thomas T. Hecht, P.C. ("the Hecht Firm"). The Individual Plaintiffs are not citizens of the United States. They are New York residents who sought legal advice from the Hecht Firm with respect to their immigration status. Plaintiff Make the Road New York ("MRNY") is a 501(c)(3) nonprofit organization that provides education and legal services to support low-income New York

residents, including immigrant populations.  26 U.S.C. §
501(c)(3).

The plaintiffs allege, in essence, that the Hechts
defrauded the Individual Plaintiffs by misrepresenting the
nature of the legal services they would provide and the type of
immigration relief that they would seek on the Individual
Plaintiffs' behalf.  They allege that the Hechts represented to
them that they were eligible for affirmative immigration relief
based on what the Hechts called the "ten year law," which would
allow the Individual Plaintiffs to receive work authorization
and/or legal permanent residency based on ten years of residence
in the United States and, in some cases, the fact that they had
U.S. citizen children.  No such affirmative relief exists.  In
fact, plaintiffs allege, the Hechts filed "boilerplate" asylum
applications with the U.S. Citizenship and Immigration Service
("USCIS"), which resulted in the Individual Plaintiffs being
placed in removal proceedings.  Once in removal proceedings, the
Individual Plaintiffs could ask for cancellation of removal
pursuant to 8 U.S.C. § 1229b(B), which is a discretionary form
of relief.  Denial of that application could result in entry of
an order of removal.

A brief overview of the structure of our immigration system
is helpful to understanding these allegations.  USCIS is an
agency within the Department of Homeland Security that is tasked

with, among other things, adjudicating affirmative requests for immigration benefits.  An individual need not be in adversarial removal proceedings in order to file an application for relief with USCIS.  One available avenue of affirmative relief is an application for asylum pursuant to 8 U.S.C. § 1158.  To be eligible for asylum, an applicant bears the burden to establish that she is a refugee as defined by 8 U.S.C. § 1101(a)(42)(A), meaning she must demonstrate past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Id. at § 1158(b)(1)(B)(i); Hong Fei Gao v. Sessions, 891 F.3d 67, 75 (2d Cir. 2018).

Irrespective of immigration status, any alien who is physically present in the United States or who arrives in the United States, whether or not at a designated port of arrival, may apply to USCIS for asylum.  8 U.S.C. § 1158(a)(1).  Unless an applicant can demonstrate "the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application," he or she must apply for asylum within one year of entering the United States.  Id. at §§ 1158(a)(2)(B), (D).  Asylum applicants who are unsuccessful and do not otherwise have lawful status are referred to the

Executive Office for Immigration Review ("EOIR") to be placed in removal proceedings pursuant to 8 C.F.R. § 208.14(c)(1).

EOIR, commonly referred to as "immigration court," is an agency of the Department of Justice. It adjudicates adversarial administrative removal proceedings which are prosecuted for the government by attorneys from Immigration and Customs Enforcement ("ICE"), which is an agency of the Department of Homeland Security. It also includes the Board of Immigration Appeals ("BIA"), which hears appeals from immigration courts nationwide. An alien who is in removal proceedings in EOIR may raise a request for asylum as a defense to removal. Additionally, an alien in removal proceedings may seek cancellation of removal pursuant to 8 U.S.C. § 1229b.

Cancellation of removal is a discretionary remedy, which allows the Attorney General to cancel removal or adjust the status of an inadmissible or deportable alien who (1) has been physically present in the United States for ten years or more, (2) has been a person of good moral character during that period, (3) has not been convicted of certain offenses, and (4) is able to establish that removal would result in "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Id. at § 1229b(b)(1). Cancellation of removal is a defense to removal.

It is not a benefit for which an alien can apply outside of
adversarial removal proceedings.  Id.

According to the FAC, each of the Individual Plaintiffs are
aliens who sought legal advice from the Hechts regarding their
immigration status.  The Individual Plaintiffs report that,
after short interviews, the Hechts or their agents represented
that the Individual Plaintiffs were eligible for lawful
permanent residency because they had ten years of residence in
the United States and/or U.S. citizen children.  The Hechts
would sometimes refer to this in Spanish as the "ten year law"
("ley de diez años") or "ten year visa."  Individual Plaintiffs
who subsequently visited the Hechts' office would sometimes note
the reason for their visit on the office sign-in sheet as "diez
años" ("ten years") or "por tiempo" ("for time").  Defendants
then instructed the Individual Plaintiffs to sign several
documents, written in English, that they said were necessary to
apply for lawful permanent residency.

Each of the Individual Plaintiffs is a native Spanish
speaker.  All but two of them are alleged to speak, read, and
understand "limited" or "very limited" English.  The defendants
did not translate the documents into Spanish, nor did they
explain the contents of the documents.  When the Individual
Plaintiffs asked questions about their applications, defendants
refused to answer and told them to simply trust them because

6

they were attorneys.  The Hechts charged the Individual Plaintiffs legal fees in installments, generally beginning with an initial payment at the first visit.

Following the initial meetings, the Hechts submitted asylum applications to USCIS on behalf of the Individual Plaintiffs. With one exception, the defendants did not tell the Individual Plaintiffs that they were submitting these asylum applications. Nor did they tell the Individual Plaintiffs that asylum applications could -- and indeed, were intended to -- result in the Individual Plaintiffs being placed in removal proceedings.

In some cases, the Hechts directed the plaintiffs to sign blank or incomplete application forms.  Form I-589, which is a standard form for asylum application, requires an individual preparing that form to attest that they prepared the application at the request of the applicant and that it was read to the applicant in a language that the applicant understands. Plaintiffs allege that the Hechts did not ask any questions during their interview to determine whether they might be eligible for asylum.

As explained above, asylum applications normally must be submitted within one year of an alien's arrival in the United States.  Each of the asylum applications prepared by the Hechts for the Individual Plaintiffs invoked "changed circumstances" to excuse late filing, without any further detail or explanation.

Each application claimed asylum on the basis of membership in a particular social group and harm or mistreatment to United States citizen children if they returned to their home country. The asylum applications prepared by the Hecht Firm were submitted by mail across state lines to USCIS's Vermont Service Center, in St. Albans, Vermont.

In some cases, the Individual Plaintiffs first learned that an asylum application had been submitted on their behalf when they received notices from USCIS acknowledging receipt of their application or scheduling an upcoming asylum interview. In some cases this information came via correspondence from the defendants. Some of the Individual Plaintiffs called or visited the Hecht Firm to ask about notices related to their asylum applications. They were told by individuals at the Hecht Firm that it had submitted asylum applications on their behalf and that this was a "standard" first step to obtaining relief under the "ten year law." At no time did defendants disclose to the Individual Plaintiffs that the asylum applications could or would result in their being placed in removal proceedings.

On May 2, 2018, the plaintiffs commenced this action against the Hechts, the Hecht Firm, and Luis Guerrero. In their initial complaint, the plaintiffs asserted claims for violation of the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute, as well as state law claims for fraud and

deceit, deceptive business practices under New York General
Business Law § 349, unjust enrichment, and breach of fiduciary
duty.  Defendants moved to dismiss that complaint on July 27,
2018.  The plaintiffs filed the FAC on August 31, 2018, thereby
mooting the July 27 motion to dismiss.  The FAC asserts the same
claims against defendants Thomas and Leonard Hecht but not the
claims against the Hecht Firm and Luis Guerrero.  Defendants
renewed their motion to dismiss on October 5, 2018.  That motion
became fully submitted on December 7, 2018.

## Discussion

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face."  Sierra Club v. Con-
Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted).
A claim to relief is plausible when the factual allegations in a
complaint "allow[] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Progressive Credit Union v. City of New York, 889 F.3d 40, 48
(2d Cir. 2018) (citation omitted).  "[T]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements, do not suffice."  Carlin v. Davidson Fink LLP, 852
F.3d 207, 212 (2d Cir. 2017).  The plaintiff must plead enough
facts to "nudge[] [his] claims across the line from conceivable

to plausible . . . ."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor."  Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018 (citation omitted).  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted).  A court may also consider documents that are "integral to the complaint."  Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).  "A document is integral to the complaint where the complaint relies heavily upon its terms and effect."  Id.  A court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit . . . ."  Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).  A court may also take judicial notice of "relevant matters of public record."  Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012).

## I. Civil RICO Claims

18 U.S.C. § 1964(c) provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . ." 18 U.S.C. § 1964(c). To state a claim under this section, a plaintiff must adequately allege "(1) that Defendants violated section 1962 and (2) that [plaintiffs] suffered an injury to [their] 'business or property,' but also (3) that [their] injury was cause 'by reason of' the RICO violation -- a standard that we have equated to the familiar 'proximate cause' standard." D'Addario v. D'Addario, 901 F.3d 80, 96 (2d Cir. 2018).

"A plaintiff bringing a civil RICO claim must allege an injury to his 'business or property;' he cannot, for example, recover for personal injuries." Bascuñán v. Elsaca, 874 F.3d 806, 817 (2d Cir. 2017) (citation omitted). "[T]he requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage, or, in other words, an economic injury." Id. (citation omitted).

Proximate cause for RICO purposes requires "some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient." Hemi Group, LLC v. City of New York, 559 U.S. 1, 9 (2010) (citation omitted); Empire Merchants, LLC v. Reliable Churchill LLLP, 902 F.3d 132, 141 (2d Cir. 2018).

Courts "rarely go beyond the first step when assessing causation under civil RICO. And what falls within that first step depends in part on an assessment of what is administratively possible and convenient." Empire Merchants, 902 F.3d at 141 (citation omitted); see also, Hemi Group, 559 U.S. at 10 ("[T]he general tendency of the law, in regard to damages at least, is not to go beyond the first step."). Factors relevant to administrative convenience include: (1) "whether it would [be] difficult to determine how much the tortious conduct injured the [plaintiff], as compared to other factors," and (2) "whether more directly injured victims would be better suited as plaintiffs." Empire Merchants, 902 F.3d at 141.

18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To establish a violation of Section 1962(c), "a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Kim v. Kimm, 884 F.3d 98, 103 (2d Cir. 2018) (citation omitted). "The requirements of section 1962(c) must be established as to each individual defendant." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001).

Section 1962(d) makes it unlawful for any person to conspire to violate the other subsections of Section 1962. 18 U.S.C. § 1962(d). "To state a RICO conspiracy a plaintiff must allege the existence of an agreement to violate RICO's substantive provisions." Williams v. Affinion Grp., LLC, 889 F.3d 116, 124 (2d Cir. 2018) (citation omitted).

"The existence of [a RICO] 'enterprise' -- one existing separate and apart from the pattern of activity in which it engages -- is a necessary element of a section 1962(c) violation." D'Addario, 901 F.3d at 99 (citation omitted). An "enterprise" is defined by statute as "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "In order to participate, directly or indirectly, in the conduct of such enterprise's affairs, . . . one must have some part in directing those affairs." United States v. Praddy, 725 F.3d 147, 155 (2d Cir. 2013) (citing Reves v. Ernst & Young, 507 U.S. 170, 179 (1993)) (emphasis omitted).

Racketeering activity is defined to include any act indictable under various specified federal statutes, including the mail fraud statute, 18 U.S.C. § 1341, and the visa fraud statute, 18 U.S.C. § 1546. A pattern of racketeering activity is defined by the RICO statute as "at least two acts of

racketeering activity" within a ten-year period." Id. at §
1691(5). "Although at least two predicate acts must be present
to constitute a pattern, two acts alone will not always suffice
to form a pattern." DeFalco, 244 F.3d at 306.

Mail fraud occurs when a person "having devised or
intending to devise any scheme or artifice to defraud," uses the
mail "for the purpose of executing such scheme or artifice or
attempting so to do." 18 U.S.C. § 1341. The elements of mail
fraud are thus "(1) a scheme to defraud, (2) money or property
as the object of the scheme, and (3) the use of the mails . . .
to further the scheme." United States v. Finazzo, 850 F.3d 94,
105 n.12 (2d Cir. 2017) (citation omitted). "A scheme to
defraud is a plan to deprive a person of something of value by
trick, deceit, chicane or overreaching. To make out such a
scheme, a plaintiff must provide proof of a material
misrepresentation." Williams, 889 F.3d at 124 (citation
omitted). "A statement is material if the misinformation or
omission would naturally tend to lead or is capable of leading a
reasonable person to change his conduct." United States v.
Weaver, 860 F.3d 90, 94 (2d Cir. 2017) (citation omitted). The
"scheme to defraud" element also requires "the specific intent
to harm or defraud the victims of the scheme." United States v.
Halloran, 821 F.3d 321, 330 & n.2 (2d Cir. 2016) (citation
omitted). "Of course, fraudulent intent is rarely susceptible

14

of direct proof, and must instead be established by legitimate inferences from circumstantial evidence." United States ex rel. O'Donnell v. Countrywide Home Loans, Inc., 822 F.3d 650, 659 (2d Cir. 2016) (citation omitted).  Although money or property must be the object of the scheme, the mail fraud statute is not "limited to schemes in which the party whose money or property is the object of the scheme is the same party whom a fraudster seeks to deceive." United States v. Greenberg, 835 F.3d 295, 306 (2d Cir. 2016).  Similarly, while the mails must be used to further the scheme, there is no requirement that the items mailed must themselves be fraudulent.  Williams, 889 F.3d at 125.  "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information." Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 647 (2008).

18 U.S.C. § 1546(a) creates the crime of visa fraud and provides, in pertinent part:

> [w]hoever knowingly makes under oath, or . . .
> knowingly subscribes as true, any false statement with
> respect to a material fact in any application,
> affidavit, or other document required by the
> immigration laws or regulations prescribed thereunder,
> or knowingly presents any such application, affidavit,
> or other document which contains any such false
> statement or which fails to contain any reasonable
> basis in law or fact

shall be guilty of visa fraud. "Visa fraud . . . has five elements: the defendant (1) knowingly (2) presented (3) an application or document required by the immigration laws (4) that contained a false statement (5) as to a material fact." United States v. Archer, 671 F.3d 149, 154 (2d Cir. 2011). A falsehood is "material" if it "has a natural tendency to influence the decisions of the decision maker." United States v. Wu, 419 F.3d 142, 144 (2d Cir. 2005). "[T]he proper context in which to assess the materiality of a falsehood under 18 U.S.C. § 1546(a) is the entire immigration process directed at an ultimate result that defendant sought when asserting the falsehood." Id. at 146

The plaintiffs' allegations of mail fraud and visa fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), "though mental states may be pleaded generally, Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015) (citation omitted). A "strong inference" of fraud may be established by alleging facts

16

showing either (1) a "motive and opportunity to commit the fraud"; or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 306 (2d Cir. 2015) (citation omitted). When a plaintiff alleges mail fraud, "[t]he complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements are fraudulent." Williams, 889 F.3d at 124.

A. The Mail Fraud and Visa Fraud Predicates

Applying this heightened pleading standard, the plaintiffs have adequately alleged the predicate mail fraud. The FAC sets forth particularized allegations indicating that the defendants were engaged in a "scheme to defraud." Each of the Individual Plaintiffs has alleged that they met with the Hechts, in their offices, on or about a certain date, and that, at those meetings, the Hechts made material misrepresentations and omissions about the nature of the services they would provide to the Individual Plaintiffs. As alleged, at no point prior to filing an asylum application did the Hechts inform any of the Individual Plaintiffs that they intended to do so, with one exception. Nor did the Hechts disclose that the ultimate -- and intended -- result of filing these applications would be placement of the Individual Plaintiffs in removal proceedings.

Each of these misrepresentations or omissions is, at the very least, "capable of leading a reasonable person to change his conduct." Weaver, 860 F.3d at 94. Indeed, the Individual Plaintiffs allege that, had the Hechts been forthright about their intended course of action, the Individual Plaintiffs would not have engaged their services or agreed to pay their fees.

The plaintiffs have also adequately pleaded that the Hechts acted with the requisite fraudulent intent. The facts alleged in the FAC plausibly demonstrate both a motive and an opportunity to defraud. The motive is clear -- monetary gain in the form of legal fees. Further, the FAC contains particularized facts demonstrating that the Hechts had an opportunity to defraud the plaintiffs, who are described as vulnerable individuals, by taking advantage of their lack of English language skills and their ignorance of immigration law.

The defendants argue that general allegations that a party would profit are insufficient to allege scienter under Rule 9(b). This argument is unavailing. The FAC makes specific allegations about the fees that were paid to the Hechts directly in exchange for their allegedly fraudulent services. The cases cited by the defendants are readily distinguishable. See, e.g. In re Take-Two Interactive Securities Litigation, 551 F. Supp. 2d 247, 273 (S.D.N.Y. 2008) (allegation of incentive

compensation does not adequately allege motive to commit securities fraud).

With regard to the second element, the object of the alleged fraud was "money or property" in the form of legal fees paid by the Individual Plaintiffs to the Hecht Firm. The third element -- use of the mails in furtherance of the scheme -- is not in dispute. The FAC asserts that the defendants mailed the I-589 forms across state lines when they submitted them to USCIS in Vermont.[1]

The plaintiffs have also adequately pleaded the predicate visa fraud. The defendants contend that the I-589 forms they submitted on behalf of the Individual Plaintiffs were "weak -- but substantively truthful," and thus cannot form the basis of a predicate visa fraud. The FAC alleges, however, that the Hechts did not collect any information from the Individual Plaintiffs that would allow them to make an honest representation that the Individual Plaintiffs were eligible for asylum. Nonetheless, on each I-589, the Hechts affirmed that they had prepared the application at the request of the Individual Plaintiffs based information of which they had knowledge or was provided to them by the Individual Plaintiffs, and that they had read the

---

[1] While not strictly necessary to support their mail fraud claim, the plaintiffs have alleged that those I-589 forms, which were sent via the mails, contained materially false statements, as set forth in more detail below.

contents of the form to their clients in a language that the clients understood. The FAC asserts that this was not true. This is a material misrepresentation. This declaration is a required part of Form I-589 and failure to complete it would result in USCIS's rejection of an asylum application. The purpose of this declaration is to deter visa fraud and ensure that USCIS can adjudicate asylum applications on the basis of truthful and accurate information. The declaration requires the preparer to acknowledge that he or she is "aware that knowing placement of false information on the Form I-589 may also subject me to . . . criminal penalties under 18 U.S.C. § 1546(a) [the visa fraud statute]."

The Hechts also argue that the plaintiffs cannot rely on visa fraud as a predicate for their RICO claims because they lack standing to bring a visa fraud claim. This argument is unavailing. The defendants specifically contend that the Individual Plaintiffs were not the recipients of the fraudulent asylum applications and the alleged fraud did not target them. While the Second Circuit has not addressed this precise issue, it has held in another context that the clients of an attorney convicted of visa fraud may be "victims" of that fraud for the purpose of restitution. As the Second Circuit observed in United States v. Archer, "if [the attorney's] clients thought

20

they were buying his honest legal services, they may well have been victims of his visa fraud conspiracy." 671 F.3d at 172.

Moreover, it is well established for other RICO fraud predicates that a plaintiff seeking recovery need not allege that he or she was the defrauded party. The plaintiff need only allege that a fraud was perpetrated with the intent and effect of causing injury to the plaintiff's money or property. See Greenberg, 835 F.3d at 306 (mail and wire fraud). The same principle should apply here. The plaintiffs have adequately alleged that the Hechts committed visa fraud with the intent of depriving the Individual Plaintiffs of their money or property in the form of legal fees. That is sufficient to state a claim for visa fraud as a RICO predicate.

The defendants cite Walters v. McMahen, 684 F.3d 435, 444 (4th Cir. 2012), for the proposition that a violation of Section 1546 is "fundamentally [a] crime[] against the government of the United States . . ." and therefore cannot be the cause of a RICO plaintiff's injury. As demonstrated below, the causal chain here is significantly less attenuated than that in Walters. In that case, a group of hourly-wage employees sued their employer for a civil RICO violation, alleging that the employer produced fraudulent I-9 documents in violation of 18 U.S.C. § 1546(b) in order to hire aliens not authorized to work in the United States. Id. at 437. The plaintiffs alleged that this practice

has the effect of depressing hourly wages for all employees. Id. at 438.  The Fourth Circuit rejected that claim, noting that the false attestations made on the I-9 forms do not directly impact the plaintiffs' wage levels and were merely "one step in a chain of events that ultimately may have resulted in the employment of unauthorized aliens . . . ."  Id. at 444  Here, the Individual Plaintiffs' alleged injury is a direct consequence of the alleged visa fraud.

B. RICO Enterprise and Conspiracy

The FAC adequately alleges that the Hecht Firm, which is a professional corporation, qualifies as an "enterprise" for the purposes of Section 1962.  The allegations in the FAC are also sufficient to establish a "pattern" of racketeering activity. Each of the thirty-three Individual Plaintiffs alleges a separate act of racketeering activity.  The plaintiffs have therefore adequately pleaded a violation of Section 1962(c). They have also adequately alleged a violation of Section 1962(d), which simply requires that there be a conspiracy to violate another provision of Section 1962.  The plaintiffs have alleged that Thomas and Leonard Hecht agreed to "participate in the conduct of an enterprise's affairs through a pattern of racketeering activity."  United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018) (citation omitted).

C. RICO Standing

The Individual Plaintiffs have alleged sufficient facts to state a plausible civil RICO claim under Section 1964(c).  As described above, the plaintiffs have plausibly alleged a violation of Section 1962(c).  The Individual Plaintiffs have also alleged damages to their property in the form of the legal fees that they paid to the Hechts in exchange for what turned out to be fraudulent services.  In general, monetary damages are considered to be "injury to property."  See, e.g., First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994); Bankers Trust Co. v. Rhoades, 741 F.2d 511, 516 (2d Cir. 1984) ("[The plaintiff] has alleged that it has been deprived of various sums of money by the defendants' activities.  There is no question that this constituted 'injury in its business or property' . . . .").

The defendants contend that the legal fees the Individual Plaintiffs paid to the Hechts are "personal expenses" that do not qualify as "injury to business or property," because RICO does not provide a remedy to defrauded consumers.  The cases they cite for this proposition are inapposite.[2]  Savastano v.

---

[2] The holding in Van Schaick v. Church of Scientology of California, Inc., 535 F. Supp. 1125, 1137 (D. Mass. 1982) has been rejected by the Supreme Court.  See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 495-97 & n.15 (rejecting any requirement of "racketeering injury" or "competitive injury" to business for RICO purposes).

Thompson Medical Co., Inc., 640 F. Supp. 1081, 1087 (S.D.N.Y. 1986) (injury from false advertising). Out of pocket losses qualify as an injury to property. See, e.g., Bascuñan, 874 F.3d at 810 (misappropriation of cash and theft of bearer shares); In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108, 122-23 (2d Cir. 2013) (payments made on fraudulent invoices). The Individual Plaintiffs have thus adequately alleged a harm to their business or property that was proximately caused by the defendants' RICO violations.

The defendants are correct, however, that MRNY has failed to state a claim under Section 1964(c) because it has failed to allege that it suffered injury to business or property that was proximately caused by the Hechts' fraudulent scheme. MRNY's asserted injury relies on multiple inferential steps to find that it suffered a cognizable RICO harm. Specifically, MRNY alleges that it has had to dedicate resources to mitigating the harm caused by the "ten-year" fraud by taking on or finding representation for the Hechts' former clients and by conducting outreach and education about the "ten year scheme." These alleged injuries are too attenuated to make out a civil RICO claim. Additionally, there are more directly injured victims here who are better suited as plaintiffs -- including the Individual Plaintiffs. MRNY's alleged injury is entirely derivative of the injury alleged by the Individual Plaintiffs.

MRNY therefore lacks standing to pursue a civil RICO claim under
18 U.S.C. § 1964(c).[3]

Finally, the Hechts assert that this is essentially action
for attorney malpractice.  It is not.  The plaintiffs do not
simply allege that the Hechts provided bad legal advice or
pursued a questionable legal strategy to obtain the relief that
the Individual Plaintiffs sought.  Rather, the allegation is
that the Hechts misled the plaintiffs, misrepresented the nature
of the services they would provide, and took legal action on
their behalf without first obtaining their permission or indeed
even informing them of their intended strategy.  In exchange for
their allegedly fraudulent services, the defendants charged the
Individual Plaintiffs legal fees, thus depriving them of "money"
or "property."

In support of this motion, the defendants have offered
government policy documents, ethical guidance from the American
Immigration Lawyer's Association, and a declaration indicating
that the legal strategy that is the subject of this action was
successfully employed by the Hechts on behalf of "hundreds" of
their clients.  This evidentiary submission may not properly be
considered on a motion to dismiss, which is addressed to the

---

[3] For the avoidance of doubt, this conclusion is limited to
statutory standing pursuant to Section 1964.  It has no bearing
on MRNY's Article III standing, which has not been challenged in
this motion.

adequacy of the FAC and not the weighing of evidence.[4]  In any
event, that evidence is irrelevant to the FAC's core allegation
that the defendants defrauded the Individual Plaintiffs by
misrepresenting the nature of their legal services or through
material omissions about those services.

## II. State Law Claims

Because the Individual Plaintiffs' civil RICO claim
survives, the Court exercises supplemental jurisdiction over
their state law claims.[5]  The defendants' motion to dismiss the
Individual Plaintiffs' state law claims sounding in fraud on
Rule 9(b) grounds is denied for substantially the reasons
discussed above.  The Individual Plaintiffs have adequately
pleaded fraud in satisfaction of the heightened requirements of
Rule 9(b).

The defendants' motion to dismiss the plaintiffs' claim for
Deceptive Business Practices under New York General Business Law
§ 349 is also denied.  In order to state a claim under Section
349, "a plaintiff must allege that a defendant has engaged in

---

[4] This declaration as well as exhibits attached to it are the
subject of a motion to strike filed by the plaintiffs.  Because
this evidence is not considered for the purposes of this motion
to dismiss, the motion to strike is denied as moot.

[5] While the FAC refers only to "Plaintiffs" when asserting state-
law claims, the claims described therein clearly belong to the
Individual Plaintiffs, and not MRNY.  The FAC indicates that
MRNY seeks only injunctive relief on its own behalf, pursuant to
18 U.S.C. § 1964(c).

(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." City of New York v. Smokes-Spirits.com, Inc., 12 N.Y.3d 616, 621 (2009). "As a threshold matter, in order to satisfy General Business Law § 349 plaintiffs' claims must be predicated on a deceptive act or practice that is consumer oriented." Carlson v. Am. Int'l Grp., Inc., 30 N.Y.3d 288, 309 (2017) (citation omitted).

For substantially the reasons described above, the Individual Plaintiffs have adequately pleaded that the Hechts engaged in materially misleading consumer-oriented conduct and that the plaintiffs suffered injury as a result. The defendants contend that the plaintiffs have failed to plead that the defendants' conduct was directed at the public at large. This argument is unavailing. The FAC plausibly alleges that the Hechts' allegedly fraudulent scheme was targeted at the immigrant community.

## Conclusion

The defendants' October 5 motion to dismiss is granted with respect to MRNY. It is denied with respect to the Individual

Plaintiffs' claims.  The plaintiffs' November 16, 2018 motion to strike is denied as moot.

Dated:    New York, New York
          March 22, 2019

                              _____
                                     DENISE COTE
                          United States District Judge