```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FRANCISCO GUZMAN, ROSARO AYALA, MANUEL   :
FLORES DOMINGUEZ, NELY OLMOS FLORES,     :    18cv3947 (DLC)
ERNESTO MEJIA GONZALEZ, ONEIDA TACUBA    :
MEJIA, MARIO ENRIQUE MUNOZ, GREGORIO     :
PEREZ ORTEGA, PATRICIA PAVIA, ROSA       :
PEREZ, ALICIO RAMOS, MARTIN TORRES       :    OPINION AND ORDER
REYES, S.F.C., D.P.C., B.R.E., O.C.F.,   :
R.M.F., A.M.M., J.M., M.M., A.M.O.,      :
E.G.R., F.T.R., R.M.R., J.C.R., and      :
F.T.V.                                   :
                                        :
                        Plaintiffs,      :
                                        :
                -v-                      :
                                        :
THOMAS T. HECHT and LEONARD H. HECHT,    :
                                        :
                        Defendants.      :
                                        :
----------------------------------------X
```

APPEARANCES:
For the Plaintiffs:
Lindsay Nash
Hannah Robbins
Kathryn O. Greenberg Immigration Justice Clinic
Benjamin N. Cardozo School of Law
55 Fifth Avenue
New York, New York 10003

Amy S. Taylor
Paige Austin
Kendal Nystedt
Jessica Young
Ariel Gould
Make the Road New York
301 Grove Street
Brooklyn, New York 11237

Abena Mainoo
Shannon Daugherty
Lindsay McKenzie
Alyssa Helfer

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

For the Defendants:
Robert J. Anello
Catherine M. Foti
Christopher B. Harwood
Nicole L. Buseman
Peter R. Dubrowski
Morvillo Abramowitz Grand Iason & Anello P.C.
565 Fifth Avenue
New York, New York 10017

DENISE COTE, District Judge:

Through their motion for reconsideration of July 12, the defendants have narrowed their requests for additional discovery to three sets of documents or information. They request more information than they are already receiving about the plaintiffs' applications for employment, government benefits, and entry into the United States. For the following reasons, the motion is denied.

**Background**

The thirty-three plaintiffs in this action are undocumented immigrants who sought legal advice from the attorney-defendants Thomas and Leonard Hecht ("the Hechts") with respect to their immigration status. The plaintiffs allege, in essence, that the Hechts defrauded them by misrepresenting the nature of the legal services they would provide and the type of immigration relief that they would seek on the plaintiffs' behalf.

2

The plaintiffs allege that the Hechts represented that they were eligible for affirmative immigration relief based on what the Hechts called the "ten year law," which would purportedly allow the plaintiffs to receive work authorization and/or legal permanent residency based on ten years of residence in the United States and, in some cases, the fact that they had U.S. citizen children. No such affirmative relief exists.

In fact, plaintiffs allege, the Hechts filed "boilerplate" asylum applications with the U.S. Citizenship and Immigration Service ("USCIS"), which resulted in the plaintiffs being placed in removal proceedings. Once in removal proceedings, the plaintiffs could ask for cancellation of removal pursuant to 8 U.S.C. § 1229b(B), which is a discretionary form of relief. Denial of that application could result in entry of an order of removal. Eighteen of the thirty-three plaintiffs have already asked for cancellation of removal. The plaintiffs' allegations and the relevant statutory framework are more fully set forth in an Opinion of March 22, which denied the Hechts' motion to dismiss. Guzman v. Hecht, 18cv3947(DLC), 2019 WL 1315888 (S.D.N.Y. Mar. 22, 2019). Familiarity with that Opinion is assumed.

The discovery disputes that have culminated in this motion for reconsideration have been ongoing for months and have been addressed on numerous occasions. The plaintiffs first raised a

3

series of discovery disputes through a letter of April 29. The defendants responded in a letter dated April 30. A conference was held on May 1, after which the parties were directed to further meet and confer. The defendants filed an additional letter on May 7 outlining remaining disputes. Another conference was held on May 7 at which the parties agreed to a procedure for producing certain information pursuant to defendants' discovery requests. On June 7, the parties submitted a joint status letter indicating that the agreed-upon process had not resolved all of their disputes.

On June 12, the Court issued a set of tentative rulings on the outstanding discovery disputes. The defendants objected to certain of those rulings in a letter dated June 16, arguing principally that the outstanding discovery requests were relevant to the plaintiffs' credibility.[1] The parties argued their positions with respect to the tentative rulings at a conference held on June 18. The parties further elucidated their positions with respect to certain of the June 12 rulings in letters dated June 26 and June 27. The June 18 conference was continued on June 28. At the June 28 conference, the parties were given an opportunity to be heard and minor

---

[1] The plaintiffs also objected to aspects of the tentative rulings, but their objections are not the subject of this Opinion.

modifications were made to the June 12 rulings. After these modifications, defense counsel were given an opportunity to orally present their arguments for reconsideration. The Court did not change its rulings in response to those requests.

This motion followed. It narrows the focus of the requests for additional discovery and presents the clearest explication to date of the reasons for these three requests.

In brief, a principal thrust of the defendants' initial requests for discovery was their attempt to ascertain the accuracy of the information contained on the Form I-589s that the Hechts filed for the plaintiffs, that is, the forms filed to initiate the asylum-seeking process. As the Court and the parties identified a method that would provide the defendants with that information,[2] and provide it through a far less burdensome process than the defendants originally contemplated, the Court addressed a number of the parties' other discovery disputes as well. From this intensive work together, and as modified at the June 28 conference, the Court's discovery rulings for this stage of the litigation were reduced to ten rulings ("Rulings").

---

[2] At the June 28 conference, the defendants indicated their satisfaction with the resolution of this issue through Ruling 1, set forth below.

The first of the ten Rulings addresses the defendants' need to know the plaintiffs' contentions about the accuracy of the information on the Form I-589s. The ten Rulings are:

1. Plaintiffs must respond to interrogatories asking them to confirm or deny the accuracy of any information contained in the Form I-589 or in the defendants' Notes. Where plaintiffs deny the accuracy of any information they must produce documents in their possession which may be used to demonstrate the inaccuracy of that information.

2. Plaintiffs must produce any Form 42B not already in defendants' possession and must respond to interrogatories asking them to confirm or deny accuracy of any information on the Form 42B.[3] Where plaintiffs deny the accuracy of any information they must produce documents in their possession which may be used to demonstrate the inaccuracy of that information. Prior to producing any Form 42Bs, the plaintiffs may serve defendants with interrogatories asking them to identify any additional information in the defendants' possession on or before the date the I-589s were submitted, whether reduced to writing or not.

---

[3] Form 42B is the document filed to seek cancellation of removal proceedings. The Hechts prepared ten such forms for plaintiffs; eight other plaintiffs have prepared such forms with the assistance of other counsel.

3. Plaintiffs must produce any Work Authorization that they have received. Plaintiffs must respond to interrogatories identifying any employment since receipt of Work Authorization, including name of employer, place of employment, job title, wages or salary, and dates of employment. Plaintiffs must produce documents in their possession sufficient to identify that employment, such as a pay stub. Defendants may not seek information from plaintiffs' employers or other third parties without further application to the Court.

4. Plaintiffs need not respond to interrogatories or produce documentation related to applications for government benefits or driver's licenses or other government issued identification.

5. Plaintiffs must respond to interrogatories requesting them to identify the date of each entry into the United States.

6. Plaintiffs need not respond to interrogatories requesting them to identify their residences in the United States or produce documents related to those residences.

7. Plaintiffs must respond to interrogatories requesting disclosure of any felony convictions or misdemeanor convictions for an offense of dishonesty or untruthfulness. Plaintiffs must provide information including date of conviction, crime of conviction, and sentence.

8. Plaintiffs need not respond to interrogatories concerning the filing of tax returns or produce tax returns.

9. Plaintiffs need not respond to interrogatories regarding medical or education history or produce medical or educational records for themselves or their families.

10. Plaintiffs must disclose documentation of any other applications made for immigration relief.

On July 12, the defendants moved for reconsideration of essentially three of these Rulings, specifically, Rulings 3, 4 and 5. They seek (1) plaintiffs' applications for employment and I-9s from the period before they received work authorization (see Ruling 3), (2) plaintiffs' applications for government benefits or driver's licenses (see Ruling 4), and (3) the details of plaintiffs' entry into the United States (see Ruling 5). That motion became fully briefed on July 31.

## Discussion

The standard for granting a motion for reconsideration is "strict." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Id. (citation omitted). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Id. (citation omitted).

Even though the defendants' requests through this motion are narrower than those they presented earlier in this litigation and the reasons for these requests are more clearly articulated, they do not suggest that the Court has not already considered this most recent iteration of their requests and the reasons for them. Instead, the defendants principally argue that it is clear error for the Court to deny them access to this discovery since it is important to their ability to present a defense. They explain that the requested discovery is relevant to challenging the plaintiffs' credibility and establishing the plaintiffs' motives in seeking immigration relief from the Hechts.

In making rulings on the scope of discovery, a court "must limit the frequency or extent of discovery otherwise allowed by these rules" if

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C); See also FIH, LLC v. Found. Capital Partners LLC, 920 F.3d 134, 145 (2d Cir. 2019); Warren v.

Pataki, 823 F.3d 125, 144 (2d Cir. 2016). Rule 26(b)(1), in turn, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 1 likewise provides that the Rules be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Similarly, Rule 26(c) provides that a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); see also S.E.C. v. Rajaratnam, 622 F.3d 159, 181 (2d Cir. 2010). A district court therefore has "wide latitude to determine the scope of discovery," and "abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." In re Agent Orange Product Liability Litigation, 517 F.3d 76, 103 (2d Cir. 2008) (citation omitted); see also Figueroa v. Mazza, 825 F.3d 89, 99 (2d Cir. 2016).

This motion attempts to create the impression that the defendants are being treated unfairly and deprived of critical

10

information.  It does so by ignoring the significant discovery they are already receiving, some of it over the plaintiffs' vociferous objections.  It also skips over the defendants' ability to obtain additional information during the depositions they will take of the plaintiffs.  As the defendants themselves have argued in resisting certain interrogatories posed to them by plaintiffs, some information is more appropriately explored during deposition.  This motion omits as well any mention of the fact that the parties will be able to renew requests for targeted discovery as they learn of or confirm its importance.  Most significantly, their argument ignores the importance of Ruling 1.

Ruling 1 is directly addressed to the information at the heart of this case, as contained in two set of documents.  Those documents are the Form I-589s that the Hechts prepared for each of the plaintiffs and the Hechts' contemporaneous notes from their interviews of each of the plaintiffs.  The most reliable evidence relating to the core of this dispute, including both the nature of the defendants' legal advice and the parties' credibility about their conversations with each other, is contained in these two sets of documents.  Those documents show what information the defendants had in their possession about an individual plaintiff and that plaintiff's family and

circumstances at the time the Hechts filed the Form I-589s for each plaintiff.

The contents of those documents will show that the defendants either did or did not have enough information in their possession prior to the initiation of the asylum process to make a good faith determination as to the risks of their intended strategy and the likelihood of its success. If the Hechts had sufficient information to suggest that a plaintiff who is denied asylum and placed in removal proceedings is likely to achieve cancellation of removal, which is a discretionary decision, it is more likely that the Hechts appropriately advised the plaintiffs and explained the risks and benefits of the strategy to them, as the defendants contend they did. If the Hechts did not have the information which would allow them to assess the likelihood that the discretionary decision to cancel removal proceedings would be made in a plaintiff's favor, then it is less likely that they adequately or accurately explained the risks. After all, in this second scenario, the Hechts would not have been in a position to make an informed judgment as to those risks. These documents, as a result, will be of critical assistance to a jury in assessing the credibility of both the plaintiffs and the defendants. Whatever other evidence the parties may present at trial about each other's credibility and motives, it will pale in significance when

compared to these core documents and the implications that a fact-finder can reliably draw from them.

Turning to the three specific requests here, the defendants have not shown that there has been any error of law in denying them the additional information that they seek. This is true for each of their three requests.

The first request is for any applications for employment and Form I-9s that plaintiffs completed for their employers before they received work authorization.[4] Putting aside that plaintiffs are unlikely to be in possession of those documents, this request is particularly puzzling in light of all the other information the plaintiffs are providing the defendants regarding their employment.

The Form I-589 required each plaintiff to identify five years of employment history. Ruling 1 requires each plaintiff to confirm or deny the accuracy of that recited five year employment history, and, if inaccurate, to produce documents in their possession which may be used to demonstrate the inaccuracy. Ruling 3 requires plaintiffs to produce any Work Authorization they have received and identify any employment

---

[4] Six months after filing a Form I-589, an asylum applicant may receive authorization from the Government to work. A Form I-9 is a form that employers are required to keep on file that documents an employee's ability to legally work in the United States.

13

since receipt of the Work Authorization, along with details about that employment and documents sufficient to identify that employment.  This production is more than sufficient to demonstrate a plaintiff's motive to apply for asylum in order to improve their employment status.  Further inquiry about the employment identified on Form I-589 or in response to Rulings 1 and 3 is better done during a deposition.

Next, the defendants seek another category of documents from the plaintiffs:  their applications for government benefits or driver's licenses.  The defendants have not explained their basis for believing that an applicant retains copies of such applications.  In any event, Ruling 4 provides that plaintiffs need not respond to interrogatories or produce documentation related to applications for government benefits or driver's licenses or other government issued identification.

As described at the June 28 conference, Ruling 4 was issued with the understanding that the defendants already have access to information from over half of the plaintiffs concerning their applications for government benefits.  The defendants are already receiving information about these applications from those plaintiffs who are seeking to cancel their removal orders. Eighteen of the thirty-three plaintiffs fall into this category; they have filed Form 42B applications for cancellation of removal.  Should a plaintiff be placed in removal proceedings

14

following the application for asylum and thereafter seek cancellation of removal, the Form 42B which the applicant files requires disclosure in response to question 41 of any public or private relief or assistance that has been received and the details about that relief.  For the eighteen plaintiffs who have already sought cancellation, whether with the assistance of the Hechts or otherwise, the defendants will be receiving copies of those Forms 42B and thus will be receiving this information pursuant to Ruling 2.

The issue is thus whether the remaining plaintiffs must provide this information.  Again, and as described at the June 28 conference, to the extent the defendants inquired into these matters in their interviews of the plaintiffs, the process established through Ruling 1 will allow the defendants access to this information as well.

For any remaining plaintiffs, the defendants apparently want to show that the plaintiffs have lied to government authorities about their status in this country in order to receive government benefits.  In particular the defendants wish to learn, apparently, whether a plaintiff has wrongfully obtained and used a social security number.  This amounts to little more than a fishing expedition.  Defendants may not generally inquire into aspects of every plaintiff's life based on their speculation that they might discover evidence of some

15

past falsehood by one or more of them.  Rather, some factual basis for believing that relevant motive evidence or significant impeaching evidence will be revealed by the discovery sought from a particular plaintiff is necessary.  This commonsense approach to discovery is particularly appropriate in this case.  Here, the defendants are already receiving extensive discovery from all thirty-three plaintiffs and are already permitted to obtain a variety of information from which they may construct arguments regarding each plaintiff's motive to regularize their immigration status or to cast doubt on a plaintiff's credibility.

Finally, defendants seek "the details" of plaintiffs' entries into the United States.  Again, this request is puzzling in light of the information the defendants are already receiving from the plaintiffs regarding their entries into the United States.

The Form I-589 required each applicant to list the date of each entry and reentry into the United States, along with the place and their status at time of entry.  It also required the applicant to list the place and date of each family member's last entry into the United States.  Ruling 1 requires plaintiffs to confirm or deny the accuracy of that information, as well as any entry information contained in the defendants' notes of their conversations with the plaintiffs.  Ruling 5 requires as

well that plaintiffs respond to interrogatories requesting them to identify the date of each entry into the United States. Thus, to the extent a plaintiff left and reentered the United States since the Form I-589 was filed, the defendants will learn of that as well. At the July 28 conference, the Court allowed defendants to explore the additional details concerning any such reentries during the plaintiffs' depositions. The defendants have not explained why that is not sufficient.

All discovery rulings require line drawing, based on an understanding of the parties' core positions, including the plaintiffs' claims and the defendants' defenses, and a need to balance the defendants' right to defend themselves with the plaintiffs' right to proceed with this litigation, all without undue burden or prejudice to any party. Rule 1's command will continue to guide this Court's administration of this case and resolution of any discovery disputes so that a "just, speedy, and inexpensive determination" of this case can be achieved for all parties. Fed. R. Civ. P. 1.

## Conclusion

Because the defendants have not pointed to any facts or controlling law that was overlooked, and have not demonstrated that adhering to the June 28 rulings would result in clear error or manifest injustice, their July 12 motion for reconsideration is denied.

Dated: New York, New York
August 6, 2019

　　　　　　　　　　　　　　　／s／ Denise Cote
　　　　　　　　　　　　　　　DENISE COTE
　　　　　　　　　　　United States District Judge